UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD YOUNG,

                Petitioner,               Case Number 2:11-CV-14681
                                                               Honorable Gershwin A. Drain

CINDI CURTIN,

                Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS
CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING
PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS**

This matter is before the Court on Petitioner Gerald Young's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. On November 19, 2008, Petitioner was convicted in the Wayne Circuit Court after a jury trial of two counts of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b, and one count of second-degree criminal sexual conduct. MICH. COMP. LAWS § 750.520c. Petitioner was sentenced to two concurrent terms of 25-to-60 years for the first-degree convictions and time served for the second-degree conviction. The petition claims that: (1) the verdict was against the great weight of the evidence, and (2) trial counsel was ineffective for failing to object to the admission of hearsay. The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability and deny permission to proceed on appeal in forma pauperis.

**I. Facts and Procedural History**

At Petitioner's trial, Toni Young testified that she had four children. Petitioner was the father of two of her children, seven-year old T.C. and ten-year old G.C. On March 29, 2008, Young took

G.C. and T.C. to Petitioner's apartment to spend the night with him.

T.C. testified that he and G.C. were alone in the apartment with Petitioner that evening. After the three finished watching a movie, Petitioner told T.C. to "suck his dick." T.C. complied, and then Petitioner hit T.C. on the check with his hand and told him to do it again. T.C. again complied with the request. Petitioner also rubbed T.C.'s bare chest.

G.C. testified that he heard Petitioner tell T.C. to perform the sex act, and heard noises, but he did not look to see what was happening. Afterwards, G.C. saw that Petitioner was naked. G.C. told Petitioner that he did not feel good and then threw up on the floor because he was worried that Petitioner would want G.C. to do the same thing as T.C.

T.C. testified that he went to use the bathroom after his brother threw up. When he returned, Petitioner asked him to perform the sex act again, and T.C. complied.

Around 11:50 a.m. the next morning G.C. called Young on Petitioner's cell phone and asked her to pick them up. G.C. did not tell his mother about the incident because he did not want Petitioner to catch him on the phone. Petitioner was still sleeping when G.C. called his mom.

Young arrived about 10 minutes later with her other two children. Petitioner was lying on the floor, and both T.C. and G.C. were lying underneath him. When they left the apartment, the boys were uncharacteristically sad.

Because the apartment was dark, Young did not see G.C.'s face until they were in the hallway. It was dirty with vomit and dried tears. Young asked T.C. what happened, and T.C. said he would tell her in the car. When she told T.C. to tell her now, T.C. told her that Petitioner told him to suck his dick. G.C. confirmed what Petitioner asked T.C. to do, and he heard Petitioner say that it felt good. T.C. testified that his mom went back upstairs while he stayed outside. One of Young's

older children, Harlon, was present and testified to hearing these statements.

Young went back into the apartment, and asked Petitioner if he liked little boys sucking on his dick, got into a confrontation with Petitioner, and then left. Petitioner did not deny anything during the confrontation, but he hollered for T.C. when she got on the elevator to leave.

T.C.'s mother called the police and waited at the building for them to arrive. The responding officers directed them to wait in the hallway of the apartment building while they talked to Petitioner. T.C. testified that he told the officers what happened.

Young then took the boys to the hospital. The next day, Young took T.C. to Kids Talk. She was separated from G.C. and T.C. during the interviews.

G.C. testified that his mom did not tell him to lie to the police. T.C. also testified that his mom did not tell him what to say to the police, and no one else did either. Harlon testified that he did not hear his mother tell T.C. or G.C. what to say. Both G.C. and T.C. stated that Petitioner had never asked them to do something like that before, and their mother stated that nothing like this was mentioned to her before.

Based on this evidence, the jury found Petitioner guilty of two counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct.

Following sentencing, Petitioner filed an appeal of right. His appellate brief raised the same two issues that he raises in the instant petition. The Michigan Court of Appeals affirmed in an unpublished opinion. *People v. Young*, No. 290264, 2010 WL 1873295, at *1 (Mich. Ct. App. May 11, 2010). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims, but it was denied by standard order. *People v. Young*, 488 Mich. 913 (2010) (unpublished table decision). Petitioner then filed his current application for habeas relief.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997)); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A]

state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id*. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979)(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-787.

### III. Analysis

**A.  Great Weight of the Evidence**

Petitioner first asserts that the jury's verdict was against the great weight of the evidence and that he is therefore entitled to a new trial. Specifically, he alleges that the allegations "came out of nowhere" and the complaining witness's testimony was too inconsistent to support the verdict.

It is well-settled that a federal court has no power to grant habeas relief on the ground that a state conviction is against the weight of the evidence. *See Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004) (federal courts have "no power to grant habeas relief on a claim that a state conviction is against the great weight of the evidence."); *see also Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003) (same). Rather, federal-habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). "[F]ederal habeas corpus relief does not lie for errors of State law." *Id.* at 67 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

To the extent Petitioner challenges the sufficiency of the evidence to convict him, he is not entitled to habeas relief. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). But, the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is:

> [W]hether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  This inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

Here, there was sufficient evidence to convict Petitioner. The victim testified that he performed oral sex on Petitioner on multiple occasions and that Petitioner fondled his chest. His testimony was corroborated by his brother who heard the assault take place, and by the fact that he made the allegations as soon as his mother picked him up. Petitioner's argument amounts to an attack on the young witnesses' credibility. Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence; they are not valid challenges to the sufficiency of the evidence. *Martin v. Mitchell*, 280 F. 3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *See United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005).

Petitioner is therefore not entitled to habeas relief on his first claim.

**B. Ineffective Assistance of Counsel**

Petitioner next contends that his counsel was ineffective for failing to object to the admission of hearsay. He asserts that his trial attorney should have objected to G.C. and Young's testimony about what T.C. told them happened on May 29, 2008.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

As to the performance prong, Petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. Petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id*. at 689.

To satisfy the prejudice prong under *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id*. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective-assistance-of-counsel claims arising from state-criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state-appellate courts reviewing their performance. *Harrington*, 131 S.Ct. at 788 ("The standards created by *Strickland* and [section] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so.")(internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

The Michigan Court of Appeals denied Petitioner relief with respect to this claim as follows:

Next, defendant argues that he is entitled to a new trial because his counsel was ineffective for failing to object when the victim's mother testified to a hearsay statement made by the victim concerning the charged sexual conduct. Defendant argues that the prosecutor failed to establish a proper foundation to admit the statement under Mich. Rule Evid. 803A. Because defendant did not raise this issue in a motion for a new trial or request for an evidentiary hearing, our review is limited to errors apparent from the record. *People v. Rodriguez*, 251 Mich. App. 10, 38 (2002).

To establish a claim of ineffective assistance of counsel, a defendant must show that

> (1) his trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. Counsel is presumed to have provided effective assistance, and the defendant must overcome a strong presumption that counsel's assistance was sound trial strategy. [*People v. Horn*, 279 Mich. App. 31, 37-38 n. 2 (2008) (internal citations omitted).]

The decision whether to object to evidence is a matter of trial strategy, and "this Court neither substitutes its judgment for that of counsel regarding matters of trial strategy, nor makes an assessment of counsel's competence with the benefit of hindsight." *People v. Matuszak*, 263 Mich. App. 42, 58 (2004). The failure to object to evidence can constitute ineffective assistance of counsel where the evidence was inadmissible and its introduction was so prejudicial that it could have affected the outcome of the case. *People v. Ullah*, 216 Mich. App. 669, 685-686 (1996).

Defense counsel did not object when the victim's mother testified on direct examination that the victim "said daddy made me suck his dick." This testimony was offered under Rule 803A, which provides, in pertinent part:

> A statement describing an incident that included a sexual act performed with or on the declarant by the defendant . . . is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:
>
> (1) the declarant was under the age of ten when the statement was made;
>
> (2) the statement is shown to have been spontaneous and without indication of manufacture;

> (3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and
>
> (4) the statement is introduced through the testimony of someone other than the declarant.
>
> Defendant argues that the second and third elements were not established in this case. We disagree. Although the victim made the statement in response to a question, statements made in response to "open-ended questions" that suggest nothing about sexual abuse can be spontaneous. *People v. Dunham*, 220 Mich. App. 268, 272 (1996). In this case, the victim's mother testified that the victim's brother appeared dirty and upset and she asked him what was wrong. When he did not respond, she asked the victim the same question. Because the question did not suggest that defendant had done anything inappropriate and because the victim's mother was seeking information about what was bothering the victim's brother rather than what, if anything, may have happened to the victim, the statement could qualify as having been spontaneously made even though it was prompted by a question. Further, the victim's delay in reporting the abuse was excusable because he remained in defendant's apartment after the incidents. He did not have an opportunity to disclose the abuse to a responsible adult until his mother came to pick him up and he told her as soon as he had left defendant's apartment. Because defendant has not established that the evidence in question was inadmissible, his claim of ineffective assistance of counsel must fail. Counsel is not ineffective for failing to raise a meritless objection. *Matuszak*, 263 Mich App at 60.

*Young*, 2010 WL 1873295, at *4-8.

Petitioner's claim hinges on the allegation that, contrary to the decision of the state appellate court, the hearsay was inadmissible under Rule 803A. The correctness of the Michigan Court of Appeals's application of the Michigan Rules of Evidence, however, is not subject to review here. It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle*, 502 U.S. at 67-68 ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). And it is equally well-established that a determination of state evidentiary law by a state appellate court in the case before it is binding in a federal habeas action. *Bradshaw v. Richey*, 546 U.S. 74,

76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Thus, in analyzing petitioner's ineffective assistance claim, the Michigan Court of Appeals's conclusion that the various statements of the victim were admissible under state law is binding. *See Narlock v. Hofbauer*, 118 Fed. Appx. 34, 34 (6th Cir. 2004) (per curiam); *Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999). Because the Michigan Court of Appeals determined that the statements of the victim were admissible under the Michigan Rules of Evidence, Petitioner cannot show that he was prejudiced by counsel's failure to object to their admission. *See Keller v. Larkins*, 251 F.3d 408, 419 (3d Cir. 2001). His second claim is therefore without merit.

### IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37. The Court concludes that a certificate of appealability is not warranted in this case

because reasonable jurists could not debate the Court's assessment of Petitioner's claims. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal could not be taken in good faith.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to proceed on appeal in forma pauperis is **DENIED**.

/s/Gershwin A Drain
Honorable Gershwin A. Drain
United States District Judge

Dated: May 30, 2013